# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL HOLLOMON, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN DIEGO, by and through the SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, a public entity; DEPUTY SEAN ZAPPIA, an individual, DEPUTY CHRISTOPHER NEUFELD, an individual, DEPUTY SHERIFF JOHN MALAN, an individual, SERGEANT DAVID BUETHER, an individual, and DOES 1-50; <br><br> Defendants. | Case No.: 3:18-CV-00528-L-NLS <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [ECF No. 12]** |

Pending before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed an opposition, and Defendants replied. For the reasons stated below, Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART** for failure to state a claim.

/ / /

/ / /

## I. BACKGROUND

Plaintiff Daniel Hollomon ("Plaintiff" or "Hollomon") was arrested for resisting or interfering with a police officer in the performance of his duties pursuant to California Penal Code Section 69 and harming a police animal pursuant to California Penal Code Section 600(a).[1] ECF No. 12-2. Defendants Deputies John Malan ("Malan"), Christopher Neufeld ("Neufeld"), and Sean Zappia ("Zappia") (hereinafter referred to together as "Defendants") arrested plaintiff, and Sergeant David Buether ("Buether") arrived on the scene after the arrest.

On March 15, 2017, Hollomon visited the Pala Casino. ECF No. 1 at 7. After being asked to leave the casino's premises for his drunken behavior, Hollomon began to walk down a "dirt area" near Route 76 while waiting for his wife to pick him up. *Id.* Approximately one-half mile from the casino, Hollomon was stopped by Malan, Neufeld, and Zappia. *Id.* Plaintiff alleges that the deputies used excessive force in detaining him and dragging him to the ground. *Id.* Plaintiff further alleges that Zappia ordered his police dog to attack Plaintiff, and that the dog bit his face, ears, neck and upper arms, while Zappia punched and kneed Plaintiff. *Id.* After the incident, Plaintiff was arrested for violating California Penal Code Section 647(f) (Drunk in Public) and later taken to a local hospital. *Id.* at 7. Buether arrived on the scene and, together the defendants, determined that they would charge plaintiff with violating California Penal Code Sections 69 and 600(a). *Id.* at 8. Plaintiff alleges that he was "unarmed, passive, hand-cuffed and attempted to comply with all of the demands being made of him" at all times during the incident. *Id.*

Plaintiff claims that Zappia was "untruthful in his report about events leading to the release of the dog and his statements that [Plaintiff] placed [the dog] in a headlock, and rolled over on top of him, and punched [the dog] in the face." *Id.* at 8. Further, Plaintiff alleges that Malan and Neufeld were "untruthful in their reports regarding their initial

---

[1] The "resisting arrest" charge (Cal. Penal Code § 69) was reduced to a misdemeanor (Cal. Penal Code § 17(b)(5)) after Plaintiff's preliminary hearing. *See* ECF No. 12-2.

contact with [Plaintiff]. They indicated that [Plaintiff] took an aggressive stance and became hostile with them when they approached him." *Id.* Plaintiff also claims that, although Malan and Neufeld claimed that Hollomon was traveling westbound on Route 76 and was in danger of being struck by a vehicle, Plaintiff was in fact traveling on a dirt path along Route 76 and therefore was in no danger. *Id.*

Plaintiff alleges that the Sheriff's Department and "its officers, detectives, supervisors and high ranking officials with the authority and ability to set forth and enforce [the Department's] policy and procedure . . . created and implemented unwritten official policies, customs, and practices that permitted and encouraged its agents, employees, and co-conspirators to deny Plaintiff his rights to equal protection under the law and to due process of law, his right to be free from unreasonable searches and seizures, and other rights guaranteed under the United States and California Constitutions, as well as statutory and common law rights[.]" *Id.* at 8. Plaintiff alleges causes of action for assault, battery, false arrest, false imprisonment, violation of California Civil Code Sections 51.7 and 52.1, violation of 42 U.S.C. Sections 1983, 1985(2), 1985(3), and 1986, negligence, and intentional infliction of emotional distress. *Id.* pp. 11-22.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants moved to dismiss Plaintiff's claims of false arrest and false imprisonment, California Civil Code Sections 51.7 and 52.1, 42 U.S.C. Sections 1983, 1985(2), 1985(3), and 1986, intentional infliction of emotional distress, and all claims as to Buether. *See* ECF No. 12-1.

## II. DISCUSSION

### A. Rule 12(b)(6)

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted where the complaint lacks a cognizable legal theory. *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (internal quotation marks and citation omitted). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory, yet fails to plead

essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984).

In reviewing a Rule 12(b)(6) motion, the Court must assume the truth of all factual allegations and construe them most favorably to the nonmoving party. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997, 999 n.3 (9th Cir. 2006). Even if doubtful in fact, factual allegations are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks and citations omitted). On the other hand, legal conclusions need not be taken as true merely because they are couched as factual allegations. *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

Generally, the Court does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Instead, the allegations "must be enough to raise a right to relief above the speculative level." *Id.* Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

"Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

/ / /

## B. Judicial Notice

Generally, the Court may not consider material outside of the pleadings in a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, there are two exceptions to this rule: courts may (1) consider material properly submitted with the complaint; or (2) may take judicial notice of "matters of public record" pursuant to Rule 201 of the Federal Rules of Evidence. *Id.* at 688-689 (quoting *Mack v. South Bay Beer Distrib.,* 798 F.2d 1279, 1282). Court proceedings and filings are properly subject to judicial notice if "those proceedings have a direct relation to the matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

Here, Defendants ask that the Court take judicial notice of the exhibits attached to their motion to dismiss. *See* ECF No. 12-1 at 4. As discussed below, these materials are directly related to the matters at issue in this case[2], and so Defendants' request for judicial notice is **GRANTED.**

## C. False Imprisonment

"False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The Court "thus refer[s] to the two torts together as false imprisonment." Id. The tort of false imprisonment is defined as "the 'nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short.'" *Rhoden v. U.S.*, 55 F.3d 428, 430 (9th Cir. 1995) (quoting *Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 715 (1994)). Thus, in order to prevail on a claim of false imprisonment under 42 U.S.C. 1983, a plaintiff must demonstrate that

---

[2] Exhibit A is the Preliminary Examination Minutes for *People vs. Daniel Hollomon*, Case No. CN370977, dated January 30, 2018, in the Superior Court of California, County of San Diego. ECF No. 12-2. Exhibit. B. is relevant portions of the Certified Transcript of the Preliminary Hearing for *People vs. Daniel Hollomon*, Case No. CN370977, dated January 30, 2018, in the Superior Court of California, County of San Diego.

there was no probable cause to arrest him. *Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006).

Plaintiff contends that there was no probable cause to arrest for public intoxication or trespassing. ECF No. 13 at 4. However, these were not the only charges for which he was arrested. Here, Judge Richard Monroy, San Diego Superior Court, found that there was probable cause to hold Plaintiff over on both California Penal Code section 69 and 600(a) at the combined motion to suppress and preliminary hearing. *See* ECF No. 12-3 at 3. Judge Monroy's reduction of count one, interfering with a police officer in the performance of his duties (Cal. Pen. Code § 69), to a misdemeanor has no bearing on the Court's determination of whether probable cause existed to make the arrest. Thus, Defendants' motion to dismiss is **GRANTED** as to this claim.

### D. California Civil Code Section 51.7

California Civil Code section 51.7 provides that "[a]ll persons within the jurisdiction of the state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51 . . . or because another person perceives them to have one or more of those characteristics." Cal. Civ. Code § 51.7. Subdivision (b) of California Civil Code Section 51 lists various protected classes, including "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status[,]" and subdivision (e) provides definitions for these terms. Cal. Civ. Code § 51.

Plaintiff has not pleaded any facts alleging that he is a member of any of the protected classes listed in Section 51, and has thus failed to state a claim as to this issue. Further, plaintiff has not addressed this argument in his Opposition and apparently has abandoned this claim. *Qureshi v. Countryside Home Loans, Inc.,* no. 09-4198, 2010 U.S. Dist. LEXIS 21843 at *6 n.2 (N.D. Cal. Mar. 10, 2010); *see also Jenkins v. County of*

*Riverside,* 398 F.3d 1093, 1095 n.4 (9th Cir. 2005). For these reasons, Defendants' Motion to Dismiss is **GRANTED** as to this claim.

### E. California Civil Code Section 52.1

California Civil Code Section 52.1 provides a private right of action for "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with." Cal. Civ. Code § 52.1(b). Essentially, Section 52.1 prohibits "all conduct aimed at 'interfer[ing]' with rights 'secured by' the constitutional or statutory law of the United States, or of California, where the interference is carried out 'by threats, intimidation or coercion[.]'"*Cornell v. City & County of San Francisco,* 17 Cal.App.5th 766, 789 (2017)(quoting *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 841 (2004)). As Defendants concede, a violation of Section 52.1 does not require a showing of "'coercion independent from the coercion inherent in the wrongful detention itself[.]'" *See* ECF No. 16 at 4. *Cornell v. City & County of San Francisco*, 17 Cal.App.5th 766, 798 (2017)(quoting *Shoyoye v. County of Los Angeles*, 203 Cal.App.4th 947, 958 (2012)). As the California Court of Appeals explained, "[n]othing in the text of the statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged." *Cornell*, 17 Cal.App.5th at 800. Thus, in order to plead a violation of Section 52.1, Plaintiff need not allege that Defendants infringed upon a constitutional right separate from Plaintiff's right to be free from excessive force. *Id.* at 799. Rather, the statute is distinguished from similar tort claims by the level of intent involved: "the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's [constitutional] right" *Cornell*, 17 Cal.App.5th at 801. Accordingly, Plaintiff's claim under Section 52.1 will survive a motion to dismiss if he has alleged sufficient facts to indicate that the officers acted with a specific intent to deprive him of his constitutional right to be free from excessive force in effectuating his arrest.

Officers display the requisite specific intent when they act with the "particular purpose" of depriving an individual of his constitutional rights; whether or not they act with subjective "spite" is relevant to the analysis. *Id.* at 804. In *Cornell*, officers pursued and arrested at gunpoint a police officer trainee while he was jogging in plain clothes. *Id.* at 771. After he had been taken into custody and the arresting officers found no evidence of any illegal activity, he was released but issued a citation for resisting arrest, which the court determined any reasonable officer would know would likely result in his dismissal from the police force, and which in fact did. *Id.* The court determined that this job loss was inflicted upon the plaintiff as a way of "undermining his ability to claim to superiors that he was arrested without probable cause[,]" and this evidence of spite was enough to meet the standard of specific intent. *Id.* at 804. In a similar case, the California Court of Appeals held that a plaintiff's claim under Section 52.1 could survive summary judgment when, although the police officers in this case had probable cause to arrest plaintiff, plaintiff produced sufficient evidence to create an issue of fact as to whether the officers deliberately utilized excessive force beyond that which was necessary to arrest plaintiff. *B.B. v. County of Los Angeles*, 25 Cal.App.5th 115, 133 (2018).

Here, construing all facts in the Complaint in the light most favorable to Plaintiff, Plaintiff's Section 52.1 claim is sufficient to survive a motion to dismiss. Plaintiff alleges that throughout the arrest Plaintiff was "unarmed, passive, hand-cuffed and attempted to comply with all of the demands being made of him, [and defendants] nevertheless unleashed a torrent of physical violence upon [him]." ECF No. 1 at 7. Plaintiff also alleges that the Defendants were untruthful in their reports that Plaintiff placed the canine officer "in a headlock, and rolled over on top of him, and punched [him] in the face" and that in their initial contact with plaintiff he "took an aggressive stance and became hostile with them when they approached him." (*Id.*) As in *Cornell*, if the evidence shows that the deputies violated Plaintiff's constitutional rights and thereafter lied in an attempt to further harm Plaintiff and obscure their misconduct, this may be sufficient evidence of a specific intent to deprive Plaintiff of his constitutional rights. Further, if, as in *B.B.,* Plaintiff can

later prove that the Defendants here deliberately used excessive force beyond what is necessary to effectuate Plaintiff's arrest, this may be enough to satisfy the standards of Section 52.1. Accepting the allegations in the complaint as true, it is possible that further evidence could reveal a specific intent on the part of the arresting deputies to deprive Plaintiff of his constitutional right to be free from excessive force. For these reasons, Defendants' motion to dismiss is **DENIED** as to this claim.

### F. 42 U.S.C. Sections 1985 and 1986

In order to state a claim under Section 1985(2), as Plaintiff purports to do, Plaintiff must show "(1) a conspiracy between two or more persons, (2) to deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiff." *David v. U.S.*, 820 F.2d 1038, 1040 (9th Cir. 1987).

As Defendants correctly note, Plaintiff has failed to plead any facts relating to witness testimony. ECF No. 12 at 8. Thus, Plaintiff's claim under Section 1985(2) cannot survive a motion to dismiss.

In order to state a claim under Section 1985(3), Plaintiff must prove that he is a member of a protected class, and that there was "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Watkins v. U.S. Army*, 875 F.2d 699, 722 (9th Cir. 1989). As already established, Plaintiff has not pleaded any facts to suggest that he is a member of a protected class. Thus, his claim under Section 1985(3) also fails.

Section 1986 provides that "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act[.]" 42 U.S.C. § 1986. Thus, Plaintiff cannot state a claim under Section 1986 since he failed to state a claim under Section 1985.

Further, when Defendants raised these arguments in their Motion to Dismiss, Plaintiff failed to respond to any of them. Thus, Plaintiff has abandoned these claims. *Qureshi*, no. 09-4198, 2010 U.S. Dist. LEXIS 21843 at *6 n.2; *see also Jenkins*, 398 F.3d at 1095 n.4 (9th Cir. 2005). For these reasons, defendants' motion to dismiss is **GRANTED** as to Plaintiff's Section 1985 and 1986 claims.

G. <u>42 U.S.C. Section 1983</u>

In order to state a claim of excessive force under Section 1983, Plaintiff must plead that "(1) the defendants acting under color of state law (2) deprived plaintiff of rights secured by the Constitution or federal statutes." *Gibson v. U.S.*, 781 F.2d 1334, 1338 (9th Cir. 1986). An officer is properly considered to be acting under color of state law when their "actions are in some way related to 'the performance of [their] official duties[,]'" or if they are purporting to act under color of state law.[3] *Van Ort v. Estate of Stanewich,* 92 F.3d 831, 838 (9th Cir. 1996) (quoting *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995). In determining whether officers utilized excessive force in effectuating an arrest, the court must discern whether or not the amount of force used was objectively reasonable; such reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 396 (1989). A police officer deprives a citizen of his constitutional right to be free from excessive force when the intrusion on a plaintiff's Fourth Amendment rights outweighs the importance of the "governmental interests alleged to justify the intrusion." *Scott v. Harris*, 550 U.S. 372, 383 (2007). The Ninth Circuit has noted that "[b]ecause such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, . . . summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly[,]" a consideration that is equally true in the context of a motion to dismiss. *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056

---

[3] Defendants do not dispute the fact that they were acting under color of state law at the time of the arrest. *See* ECF No. 12 at 7-8.

(9th Cir. 2003). In balancing a claimant's constitutional rights against the government interest involved in the incident, the Court must consider several factors, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or officers, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

In *Gregory v. County of Maui*, police pinned to the ground and handcuffed a trespasser who stopped breathing during the altercation and was later pronounced dead from a heart attack. 523 F.3d 1103, 1105 (9th Cir. 2008). The Ninth Circuit held that the officers did not use excessive force because they had been informed that the trespasser had assaulted another man prior to the officers arriving at the scene, they had reason to believe that he was under the influence of drugs, and he threatened them with a pen which he refused to drop. *Id.* at 1106-07. Additionally, the officers attempted to persuade the suspect to drop his weapon before engaging him physically, and never struck him or used a weapon against him. *Id.* at 1107.

Here, Plaintiff was initially stopped by the deputies for being drunk in public. ECF No. 1 at 7. As detailed above, Plaintiff has alleged that he was passive and compliant throughout his arrest. *Id*. Viewed in the light most favorable to Plaintiff, these facts suggest that he did not pose a threat to the safety of the officers. However, probable cause was later found for Plaintiff's resisting arrest charge, a fact that weighs in favor of the Defendants' reasonableness in the way they handled the situation. Whether or not this situation warranted the amount of force exercised by the deputies in deploying their canine is an issue unfit for disposition in a motion to dismiss. This determination requires a careful inspection of the evidence, which is not available to us at this stage of the litigation. Thus, at this point, the Court cannot dismiss this claim on the grounds that Defendants did not unreasonably infringe upon Plaintiff's constitutional rights.

Defendants contend that they are entitled to qualified immunity with respect to this claim. ECF No. 12 at 7-8. Government officials are entitled to qualified immunity unless their conduct "violate[s] clearly established statutory or constitutional rights of which a

reasonable person would have known." *White v. Pauly*, 137 S.Ct. 548 (2017) (internal citations omitted). Rights are clearly established when precedent can be identified holding officers liable under similar circumstances. *Marziti v. First Interstate Bank of California*, 953 F.2d 520, 523 (1992). Plaintiff bears the burden of identifying such case law. *Id.* Here, Plaintiff has identified no case law holding officers liable for conduct similar to the alleged actions of the deputies here – specifically, releasing a canine on a suspect after he has already been restrained.

However, the Court has identified precedent in which officers have been held liable for similar conduct. In *Mendoza v. Block*, a robbery suspect who police believed to be armed hid from police in some bushes. 27 F.3d 1357, 1362 (9th Cir. 1994). Police warned him that if he did not surrender they would send their canine in to pull him out, and after the suspect refused to emerge, the canine dragged him out of the bushes. *Id.* The police dog maintained a bite hold on the suspect until he stopped struggling and the officers were able to handcuff him. *Id.* The court explained that the officers were not entitled to qualified immunity because, although there were few cases involving the use of police dogs to apprehend fleeing suspects, there was ample law available to the officers regarding the use of excessive force, which the court reasoned could just as easily involve a police dog as any other weapon. *Id.* at 1361-1362. Thus, "no particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control." *Id.* at 1362. This analysis was elaborated upon in a later case, in which the court held that the continued use of a canine on a suspect who had already surrendered was unlawful. *Koistra v. County of San Diego*, 310 F.Supp.3d 1066, 1084 (S.D. Cal. 2018). In the present case, Plaintiff has alleged that Defendants deployed their canine despite the fact that he was passive throughout the arrest. ECF No. 1 at 7. As such, the Defendants' conduct may have violated Plaintiff's clearly established constitutional rights of which a reasonable person would have known. For these reasons, Defendants' motion to dismiss is **DENIED** as to this claim.

### H. Intentional Infliction of Emotional Distress

In order to state a claim for intentional infliction of emotional distress, a plaintiff must plead facts which allege "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard for the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress." *Bogard v. Employers Casualty Co.*, 164 Cal.App.3d 602, 615 (1985) (internal citations omitted).

Defendants contend that Plaintiff has failed to state a claim of intentional infliction of emotional distress because he has not identified any outrageous conduct on behalf of the defendants, and thus has failed to satisfy the first element of the claim. ECF No. 12 at 8-9. A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes v. Pair*, 46 Cal.4th 1035, 1050-51 (2009) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1001 (1993)). In *Cervantez v. J. C. Penney Co.*, the court held that nonsuit was improper for the plaintiff's claim of intentional infliction of emotional distress when a security guard at a retail store stopped and arrested plaintiff and his friend, accusing them of stealing although they did not do so in his presence. 24 Cal.3d 579, 590 (1979) (overturned by legislative action on other grounds). The court reasoned that "plaintiff presented evidence that, if believed, would reasonably support an inference that [the security guard] arrested him either with knowledge that plaintiff had not committed any offense or with reckless disregard for whether he had or had not." *Id.* at 593. Similarly, in this case Plaintiff's claim of intentional infliction of emotional distress cannot be dismissed because Plaintiff has pleaded facts which, if believed, may give rise to a violation of California Civil Code Section 52.1 and use of excessive force pursuant to 42 U.S.C. Section 1983. If Plaintiff prevails on these claims, it follows that defendants' conduct also "exceed[ed] all bounds of [conduct] usually tolerated in a civilized community," and is thus sufficiently "outrageous" to satisfy a claim of intentional infliction of emotional distress. *Hughes*, 46 Cal.4th at 1050-51. For this reason, Defendants' motion to dismiss is **DENIED** as to this claim.

## I. Claims Against Sergeant Buether

Defendants contend that all claims against Buether should be dismissed, because he was not present during the incident giving rise to the ECF claim. ECF No. 12 at 9. Under 42 U.S.C. Section 1983, liability can extend to those whose individual actions do not rise to the level of a constitutional violation if they perform functions "integral" to the alleged violation. *Bravo v. City of Santa Maria,* 665 F.3d 1076, 1089-90 (9th Cir. 2011). However, the Ninth Circuit cautioned that "the 'integral participant' doctrine does not implicate government agents who are 'mere bystanders' to [a constitutional violation]." *Id.* at 1090.

In *Bravo*, the court held that officers who conducted a background check prior to the execution of a search warrant were not liable for alleged violations of the Fourth Amendment during its execution because they were not present during the search. *Id.* at 1090. The court reasoned that they were "not even bystanders," and thus could not be held liable. *Id.* Similarly, here Plaintiff concedes that Buether was not present during the arrest in which the alleged use of excessive force occurred. ECF Nos 1 at 7; 13 at 8. Thus, Buether was not an "integral participant" in the arrest, but rather a "mere bystander[,]" and Plaintiff's Section 1983 claim must be dismissed as to Buether.

Vicarious liability is not proper under Section 1983 and California Government Code Section 820.8. 42 U.S.C. § 1983; Cal. Gov. Code § 820.8. Indeed, Plaintiff concedes that he is not relying upon a theory of vicarious liability. ECF No. 13 at 8. Rather, Plaintiff claims that Buether "knowingly allowed subordinate personnel, Defendants Neufeld, Malan, and Zappia to intentionally covered [*sic*] up the misconduct of the Deputies' wrongdoing[.]" *Id.* at 9. Plaintiff alleges that this cover-up forms the basis of a negligence claim against Buether for his failure to "properly test, screen, examine and evaluate" the officers before and during their employment, and for failing to "properly train, monitor, control, report, discipline, or otherwise supervise deputies, and further failure to control, report, punish, or terminate said deputies after learning of the deputies violent and abusive actions[.]" (*Id.*) In their reply, Defendants do not address plaintiff's negligence claim. ECF No. 16 at 6-7. For these reasons, Defendants' motion to dismiss is **GRANTED** as to

14

18-cv-00528-L-NLS

Buether for Plaintiff's claims of violation of California Civil Code Section 52.1, excessive force under Section 1983, and intentional infliction of emotional distress, as well as the claims that were dismissed as to all Defendants. However, as Defendants did not address the claims against Buether for negligence, Defendants' motion to dismiss is **DENIED** as to this claim.

### J. Leave to Amend Complaint

When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegations of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citations omitted). Plaintiff requests leave to amend his complaint if any part of Defendants' motion to dismiss is granted. ECF No. 13 at 12. The Court finds that the deficiencies in the initial complaint could be cured by amendment. As such, the Court **GRANTS** Plaintiff's request for leave to amend its initial complaint. Plaintiff shall file an amended complaint no later than 14 days after the date this order is issued.

## III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

Dated: October 30, 2018

Hon. M. James Lorenz
United States District Judge